**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **PENI KAPESI JR.,** ) | |
| ) | |
| **Plaintiff,** ) | Case No. EDCV 16-64 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

      Plaintiff seeks reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

      The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2-4]. In a July 21, 2014 written hearing decision that constitutes the Commissioner's final decision, an Administrative Law Judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ further determined that plaintiff's RFC did not preclude him from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found plaintiff not disabled at any time from June 1, 2007, his alleged onset date, through the date of the

1 ALJ's decision. [Administrative Record ("AR") 23-38].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Credibility finding**

Plaintiff contends that the ALJ erred in evaluating the credibility of his subjective symptoms. [JS 33-36].

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Treichler v. Comm'r, Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014); Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record,

among other factors." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that plaintiff suffers from the following severe impairments: "migraines, diabetes, affective disorder, cannabis dependence, alcohol abuse, obesity, degenerative disc disease of the lumbar and cervical spine, status post spinal fusion in 1998 with grade 1 slippage postoperative changes, narrowing foraminal, degenerative joint disease facets, bilateral carpal tunnel, and radiculopathy." [AR 25]. The ALJ did not find affirmative evidence of malingering. The testimonial and documentary evidence shows that plaintiff' had a history of lumbar fusion surgery in 1998 or 2000. Plaintiff stopped working in June 2007 after injuring his spine and bilateral upper extremities at his job for a bottled water company in 2006. Plaintiff filed a workers' compensation claim that was settled. The settlement documents state that the parties entered a compromise and release because there was a dispute of fact as to whether plaintiff's injury to his back and upper extremities was apportionable to his 2006 industrial injury or to a 1998 injury to the same body parts. [AR 25, 29, 41-48, 53-54, 192-216, 492, 497-498].

Plaintiff testified as follows. He suffers from back pain and swelling in his legs. His whole left side is numb. He used a cane prescribed by Dr. Kwok because he gets dizzy and off balance, and in 2013 he had used a walker prescribed by Dr. Kwok for the same reason. [AR 41-42, 48, 50, 62]. He can walk about 40 yards without the cane. He can stand for ten to fifteen minutes before he needs to shift position, sit for about thirty minutes before he feels pain, and is most comfortable lying down. [AR 62- 64]. His left side numbness can affect his left hand, making it difficult to grasp or lift items. [AR 65]. He cannot lift his left arm above his head due to neck and shoulder pain, and he also suffers from hourly migraine headaches. [AR 66]. Plaintiff said that his pain adversely affects his memory and concentration. [AR 68].

Medical records dating from 2008 to 2014 show a history of pain complaints and treatment for plaintiff's back injury and the resulting pain. Beginning in March 2008, Naresh K. Sharma, M.D., treated

plaintiff for "severe low back pain radiating to the legs" and "pain in his neck that radiated to the left shoulder and left upper extremity." [AR 491]. In April 2010, Dr. Sharma re-evaluated plaintiff and diagnosed failed back syndrome with lumbar radiculopathy and cervical sprain and strain with cervical spondylosis. Plaintiff's "condition has not improved. . . [h]e is in constant pain." [AR 497]. In 2011, plaintiff sought help from Wonil Yoon, M.D., for "low back pain radiating to the left leg with numbness and tingling to the foot." [AR 712]. In July 2012, plaintiff went to Burton Lutsky, D.O., who diagnosed degenerative disc disease of the lumbar spine based on clinical findings and MRI results. Plaintiff complained of "constant pain in his low back and lower extremities." [AR 483]. Wei Wah Kwok, M.D., also treated plaintiff's pain from 2012 to 2014. [See AR 389-402, 413-419, 463-471]. Dr. Kwok said that plaintiff "suffers constant pain on the left side of his neck that radiates up to his head with associated headaches and dizziness. He has shooting pain in his left arm that extends down through his hand with numbness and tingling. . . .[t]he constant pain in his lower back radiates down through his left leg." [AR 665].

The ALJ rejected plaintiff's evidence of his subjective complaints with the following analysis:

> "After careful consideration of the evidence, the undersigned finds that the [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The [plaintiff] has made some inconsistent statements regarding his symptoms and impairments. He testified that he could only sit for 20 minutes, and then he sat for 35 minutes during the hearing and only stood up when the alleged problem was mentioned. Further, when undergoing a psychiatric consultative evaluation, the [plaintiff] did not inform the doctor about his past cannabis use. The [plaintiff] is able to take care of his personal needs."

[AR 29-30].

The ALJ then discussed the medical evidence, which she summarized without relating the findings and conclusions documented in that evidence back to plaintiff's subjective pain testimony. [See AR 30-31]. Repeatedly, the ALJ merely noted that plaintiff "is able to care for his personal needs" as her rationale for

4

1  accepting or rejecting a doctor's report. [AR 30-31].

2      The ALJ's credibility assessment is deficient. There is little discussion of the various factors an ALJ must consider in evaluating credibility, and the ALJ did not articulate specific, convincing reasons for disbelieving plaintiff's subjective testimony about his symptoms. The ALJ's credibility decision is vague and conclusory, and the ALJ did not provide any coherent rationale to support her conclusion that plaintiff's subjective allegations "are not entirely credible." [AR 30]. The ALJ is "required to point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he or she] claims," in order to adequately support an adverse credibility finding. Vasquez v. Astrue, 572 F.3d 568, 592 (9th Cir. 2008). Here, the ALJ rejected plaintiff's subjective symptom testimony by summarizing the medical evidence without pointing to specific medical evidence to support her credibility analysis. "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence without any specific findings in support of that conclusion is insufficient for our review . . . . The ALJ must identify the testimony that was not credible and specify what evidence undermines the claimant's complaints." Treichler, 775 F3d at 1103 (citations omitted).

15      Defendant invites the court to draw inferences from the ALJ's opinion about the bases for her credibility finding, but a court properly may draw inferences from the ALJ's opinion only "if those inferences are there to be drawn," Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), and "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." Treichler 775 F.3d at 1103; see Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts. . . . . To support a lack of credibility finding, the ALJ was required to point to specific facts in the record.") (italics and ellipsis omitted).

22      Defendant proffers four contentions in support of the ALJ's credibility finding. First, defendant contends that the ALJ found that the objective medical evidence did not corroborate plaintiff's subjective allegations. The ALJ summarized the medical reports without specific analysis or discussion of plaintiff's subjective symptom testimony and without identifying specific conflicts between the medical reports and plaintiff's claims. See Burrell, 775 F.3d at 1137-1140 (holding that where "the ALJ never connected the medical record to [the claimant's] testimony" about her subjective symptoms, the ALJ had not demonstrated a conflict between that testimony and the medical record sufficient to reject the claimant's subjective

testimony); Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (holding that the ALJ's determination that the claimant's complaints are "inconsistent with clinical observations" without "specify[ing] what complaint are contradicted by what clinical observations" was not a clear and convincing reason for discrediting the claimant's testimony). Furthermore, as the Ninth Circuit has "repeatedly said, the ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings." Fair, 885 F.3d at 602.

Second, defendant argues that the ALJ noted that only conservative treatment was recommended. That is a misstatement of the record. The ALJ made no observations about conservative treatment in her decision. Indeed, plaintiff had already undergone lumbar fusion surgery when he reinjured his spine at work in or around 2006. [See AR 25, 29]. Furthermore, plaintiff's treatment history after his alleged onset date included a two referrals to pain specialists; prescriptions for a variety of narcotic pain medications; epidural spinal injections; prescriptions for a walker, a cane, and a lumbar back brace; physical therapy; radio frequency ablation in the lumbar areas of the spine; and a recommendation for surgery to remove hardware in his back that was denied by the workers' compensation insurance carrier. One of plaintiff's treating pain specialists, Dr. Kwok, also said that plaintiff would be a candidate for caudal epidural steroid injections "in the future if blood sugar control improves. He is currently not a candidate due to poorly controlled diabetes." [See, e.g., AR 416, 487]. Therefore, even if the ALJ properly considered plaintiff's course of treatment, she could not reasonably have concluded that it was inconsistent with his subjective pain complaints. [AR 55, 57-58, 63-64, 389-402, 405-450, 455-462, 468, 473-481, 483, 491, 551-552, 586-588, 636, 665-666].

Third, defendant argues that plaintiff made inconsistent statements. The ALJ noted that plaintiff "testified that he could only sit for 20 minutes, [but] then he sat for 35 minutes during the hearing and only stood up when his alleged problem was mentioned." [AR 30]. That determination is factually and legally flawed. Plaintiff testified that he could sit "[f]or like 30 minutes" before he needed to change position, not 20 minutes as the ALJ wrote. [AR 64]. Plaintiff's ability to sit for 35 minutes during the hearing, standing up once during that period, was consistent with his subjective testimony. Furthermore, the fact that a claimant "does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that [plaintiff] is not disabled or that his allegations of constant

6

pain are not credible." Gallant v. Heckler, 753 F.3d 1450, 1455 (9th Cir. 1984); see also Fair, 885 F.3d at 602 ("That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain.").

The ALJ also that inferred that plaintiff concealed his cannabis use from the consultative examining psychiatrist, Ernest Bagner III, M.D., because Dr. Bagner's January 2013 examination report does not mention cannabis use. [See AR 30, 114, 375-379]. The ALJ concluded that the omission was indicative of dishonesty. Elsewhere in her decision, however, the ALJ found that "the medical evidence indicates that plaintiff ha[d] stopped using marijuana" some time before January 2013. [AR 26 (citing a January 2013 treating note [AR 392])]. Since the ALJ concluded that plaintiff had stopped using marijuana in or before January 2013, his apparent failure to report marijuana use to Dr. Bagner is not a clear or convincing reason for doubting his overall credibility.

Finally, defendant contends that the ALJ found plaintiff's subjective symptom testimony to be inconsistent with his daily activities. Other than saying that plaintiff can "care for his personal needs," the ALJ did not describe plaintiff's daily activities or contrast those activities with his alleged limitations. [See AR 30-31]. Standing alone, plaintiff's mere ability to care for his personal needs is not inconsistent with his subjective complaints of disabling pain and other symptoms since "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1015-1016 (9th Cir. 2014) (noting that "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain," and holding that the ALJ erred in concluding that the plaintiff's reported daily activities, which "included talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter," were inconsistent with her pain complaints); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (noting that "a disability claimant need not vegetate in a dark room in order to be deemed eligible for benefits," and that only if the claimant's "level of activity were inconsistent with [his or her] claimed limitations would these activities have any bearing on [the claimant's] credibility") (internal quotation marks omitted). Therefore, the ALJ failed to demonstrate how plaintiff's daily activities detracted from the credibility of his subjective complaints. See Burrell, 775 F.3d at 1137-1140 (rejecting the Commissioner's argument that there were inconsistencies between the claimant's hearing testimony and

her reported daily activities because "the ALJ did not identify those inconsistencies" and instead mentioned "in passing and in a different section than the credibility determination" that the claimant's "self-reports were inconsistent in some unspecified way with her testimony at the hearing," and stating that a court "may not take a general finding—an unspecified conflict between [the claimant's] testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts").

The ALJ committed reversible legal error by failing to articulate specific, clear, and convincing evidence for rejecting the alleged severity of plaintiff's subjective complaints. See Moisa, 367 F.3d at 885 (holding that the ALJ committed "clear error" where he rejected the claimant's subjective testimony solely for lack of objective medical evidence corroborating it, cited no evidence of malingering, "and made no findings that would allow us to conclude that he rejected the testimony on permissible grounds, such as a reputation for dishonesty, conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony").

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in granting little or no weight to the opinions of treating physicians Wei Wah Kwok, M.D. and Burton Lutsky, D. O. [JS 5-11].

Dr. Lutsky, plaintiff's primary care physician, treated plaintiff roughly every two or three months from 2012 through the hearing date in April 2014. Plaintiff's diagnoses were degenerative disc disease of the lumbar spine with spinal stenosis, failed low back surgery in 2000, type II diabetes, dyslipidemia, and insomnia. Plaintiff's treatment included diabetes medications (metformin, glyburide); the narcotic pain reliever Norco; Lopid (gemfibrozil), a medication to reduce cholesterol and triglycerides; and a referral to a pain management specialist. [AR 66, 405-412, 455-462, 473-481, 483]. In April 2013 and again in January 2014, Dr. Lutsky opined that during an eight-hour work day, plaintiff could sit for a total of two hours, stand or walk for a total of one hour, needed to alternate positions every 30 minutes, had "marked" limitations of the bilateral upper extremities (meaning "essentially precluded"), and had additional exertional and non-exertional limitations. Among other things, Dr. Lutsky concluded that plaintiff's symptoms would frequently interfere with his attention and concentration and that he would need to take unscheduled, 30-minute rest breaks at approximately 30-minute intervals. In Dr. Lutsky's "best medical opinion," plaintiff's symptoms and functional limitations began in 2006. [AR 405-412, 483].

In December 2012, Dr. Lutsky referred plaintiff to Dr. Kwok, a pain management specialist at Premier Pain Consultants, for evaluation of low back pain. Dr. Kwok treated plaintiff bi-weekly or monthly from January 2013 through the date of the hearing April 2014 for diagnoses of cervical spondylosis, lumbar post-laminectomy syndrome, lumbar spondylosis, lumbar radiculopathy, lumbar spondylolisthesis, and chronic pain syndrome. Dr. Kwok also noted that plaintiff had diffuse numbness on the left side that possibly was the result of a stroke. Dr. Kwok ordered imaging studies; prescribed medications (including trazodone, Norco, and Oyxcodone); prescribed a walker and a cane; and referred plaintiff for acupuncture and physical therapy. [AR 58, 63-64, 389-402, 413-450, 665-666].

In May 2013 and again in April 2014, Dr. Kwok opined that during an eight-hour work day, plaintiff could sit for a total of two hours, stand or walk for a total of one hour, needed to alternate positions every 20 to 30 minutes for 30 minutes at a time, had "moderate" upper extremity limitations (meaning "significantly limited but not completely precluded") on his non-dominant left side, and had additional exertional and nonexertional limitations. Among other things, Dr. Kwok concluded that plaintiff's symptoms would "constantly" interfere with his attention and concentration, that he would need to take frequent unscheduled breaks ranging from 30 to 60 minutes at a time, and that he would likely miss more than three work days a month due to his impairments. In Dr. Kwok's "best medical opinion," the earliest date that plaintiff's description of symptoms and limitations applied was 2006. [AR 448-449, 665-666].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick, 157 F.3d at 725); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn, 495 F.3d at 631.

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion

must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund, 253 F.3d at 1157; SSR 96-2p, 1996 WL 374188 SSR 96-2p, 1996 WL 374188, at *1-*2. A treating physician's opinion that is contradicted by substantial evidence in the record, such as the opinion of an examining physician based on independent clinical findings, is not entitled to controlling weight; however, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in the Commissioner's regulations. Orn, 495 F.3d at 632 (quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[1]

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ rejected the treating source opinions from Dr. Lutsky and Dr. Kwok in favor of the opinions of the examining and non-examining physicians. [See AR 26-31]. The ALJ, however, did not provide specific, legitimate reasons based on substantial evidence in the record for rejecting those treating source opinions.

The ALJ gave Dr. Lutsky's opinion "little weight" because it was "not consistent with the medical evidence," because plaintiff "is able to care for his personal needs," and because his back pain improved "with shots to the back." [AR 31]. Dr. Lutsky identified specific findings supporting his opinion: reduced range of motion in the lumbosacral spine; muscle spasms in the spine; positive straight-leg raising[2]; and

---

[1] Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors," such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn, 495 F.3d at 631; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

[2] During the straight leg raising or Lasegue test, the knee is extended and the leg elevated by flexing the hip while supine. A positive test, which is significant for compression of the L4-L5 or

10

January 2011 lumbar spine MRI results. [AR 483, 405-406]. The ALJ did not identify any specific medical evidence in the record that was inconsistent with Dr. Lutsky's opinion, nor did she attempt to explain why the findings Dr. Lutsky cited were insufficient to support his functional assessment. See Lester, 81 F.3d at 832-833 ("The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments. . . . The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."); Regennitter, 166 F.3d at 1299 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (quoting Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)). Additionally, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, *3-*4.

In this case, the factors identified in the regulations favor giving Dr. Lutsky's opinion more weight than a contrary non-treating source opinion. Dr. Lutsky had an ongoing treatment relationship with plaintiff of approximately two years' duration; he saw plaintiff every two or three months; he physically examined plaintiff and obtained diagnostic laboratory test results; he identified evidence supporting his conclusions; and his conclusions were consistent with those of Dr. Kwok, a treating specialist. Therefore, Dr. Lutsky had the opportunity to acquire detailed, longitudinal knowledge of plaintiff's impairments, and Dr. Lutsky's opinion was supported by the record and consistent with other substantial evidence in the record. See 20

---

L5-S1 spinal nerve roots, occurs when pain is produced in the sciatic nerve. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th §§ 18:3-18:4 (database updated October 2016).

C.F.R. §§ 404 .1527(c)(2)-(6), 416.927(c)(2)-(6).

The other two reasons provided by the ALJ for rejecting Dr. Lutsky's opinion are not specific, legitimate and supported by substantial evidence. Plaintiff's ability to care for his personal needs does not conflict with Dr. Lutsky's opinion in any material way. Dr. Lutsky did not say or imply that plaintiff could not care for his personal needs; he said that plaintiff could not perform "full-time, competitive employment for at least 12 months," and he based that conclusion on his functional assessment and supporting findings. [AR 405-412, 483]. Similarly, plaintiff's response to receiving "shots to the back" does not undermine the reliability of Dr. Lutsky's opinion. The pain specialist who administered lumbar facet injections in 2009 reported that they gave plaintiff complete or nearly complete pain relief for 10 days to two weeks, but then the pain returned and "is stopping him from doing many activities." [AR 327-328, 353-354, 341]. Indeed, nearly three years receiving those injections, plaintiff's pain was still intractable enough that Dr. Lutsky referred him to Dr. Kwok for pain management. In his May 2013 assessment, Dr. Kwok specifically noted that plaintiff's prior epidural steroid injections provided "short term benefit only." [AR 468]. Accordingly, plaintiff's response to those injections does not contradict Dr. Lutsky's opinion; if anything, it supports his opinion that plaintiff had intractable, disabling pain and functional limitations.

The ALJ gave two similarly conclusory, deficient reasons for rejecting Dr. Kwok's opinion: that it is "inconsistent with the medical records corresponding to the same period of time," and plaintiff "is able to care for his personal needs, which indicates that his limitations are not as significant as what the doctor has found." [AR 31]. As with Dr. Lutsky's opinion, the ALJ did not identify the medical records or medical evidence she relied on and explain how that evidence was inconsistent with Dr. Kwok's opinion, and there is no inconsistency between Dr. Kwok's opinion and plaintiff's ability to care for his personal needs. See Lester, 81 F.3d at 832-833; Regennitter, 166 F.3d at 1299. In addition, Dr. Kwok identified clinical findings that supported his opinion, including antalgic gait with use of a cane favoring the left lower extremity, positive straight leg raising on the left, absent deep tendon reflexes in the left upper and lower extremities, inability to heel/toe walk, pain and tenderness on palpation of the spine, muscle spasms in the lumbar spine

area, abnormal Patrick's test[3] on the left, and March 2013 nerve conduction and EMG studies indicative of "chronic left L5-S1 radiculopathy without acute denervation that does correspond with [plaintiff's] symptoms." [AR 422-424, 427-428, 464]. He also pointed to abnormalities in plaintiff's lumbar spine MRI and CT scans. For example, plaintiff's April 2013 lumbar spine MRI showed laminectomies (spinal decompression surgery) present at L4 and L5; at L3-L4, a 2 millimeter disc bulge with mild bilateral neural foraminal stenosis (narrowing of the formamina, the open spaces between vertebrae through which spinal nerves pass); moderate to severe facet joint arthropathy (abnormality); at L4-L5, grade 1 spondylosis (spinal degeneration) and facet joint hypertrophy (degeneration and enlargement of the facet joints); and moderate facet joint arthropathy at L5-S1. Plaintiff's January 2011 CT scan revealed moderate hypertrophic facet changes, relative lateral recess stenosis bilaterally, mild spondylosis, and a 2 millimeter central disc protrusion at L3-4. [See AR 29, 422-424, 425-428, 443, 665].

Utilizing the factors set forth in the regulations, Dr. Kwok's opinion is entitled to more weight than a contrary non-treating source opinion because he treated plaintiff for about two years, saw plaintiff approximately monthly, employed a variety of treatment modalities, physically examined plaintiff, ordered diagnostic testing, was a pain specialist, supported his opinion with clinical findings and diagnostic test results, and rendered an opinion that was consistent with that of another treating source, Dr. Lutsky. See 20 C.F.R. §§ 404 .1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's reasons for rejecting Dr. Lutsky's and Dr. Kwok's treating source opinions are not specific, legitimate, and based on substantial evidence in the record. Accordingly, the ALJ committed reversible legal error in analyzing the medical opinion evidence.

**Remedy**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing[.]" Treichler v. Comm'r of Soc., Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). As the Ninth Circuit has explained, however,

> the proper course, except in rare circumstances, is to remand to the agency for additional

---

[3] A positive Patrick's sign, also known as FABERE (an acronym for flexion, abduction, external rotation and extension), is significant for a hip joint disorder. 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 4th § 18:4 (database updated October 2016).

investigation or explanation. Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

If the district court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy, and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony. In particular, we may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act. Dominguez v. Colvin, 808 F.3d 403, 407–408 (9th Cir. 2015) (internal quotation marks, citations, and

brackets omitted).

The ALJ committed harmful legal error by rejecting plaintiff's subjective symptom testimony and the treating source disability opinions. The record is fully developed, in that it contains hearing testimony from plaintiff, a medical expert, and a vocational expert; plaintiff's longitudinal treatment records covering a period of several years; consultative examination reports; and treating and non-treating source medical source opinions, including medical opinions that were submitted to the Appeals Council. For the reasons explained above, plaintiff's subjective testimony is not inconsistent with the medical evidence or other substantial evidence in the record. Furthermore, defendant has not pointed to evidence in the record that creates a serious doubt that plaintiff is disabled when the testimony and medical opinion evidence are properly weighed. The vocational expert testified that a hypothetical person who had limitations corresponding to some of those found by Dr. Lutsky and Dr. Kwok[4] could not perform the alternative jobs identified by the ALJ or any other alternative jobs available in significant numbers. [See AR 73, 75]. Therefore, the ALJ would be required to find plaintiff disabled on remand if the improperly discredited evidence were credited as true. Since the criteria for an award of benefits are satisfied, the Court remands this case for the payment of benefits.[5]

///

///

///

---

[4] The vocational expert testified that no alternative work could be performed by a hypothetical person of plaintiff's age, education, and vocational background who "was off task 20 percent of the time," or who was "absent three or more days a month," or who had "marked" upper extremity limitations. [AR 73, 75]. The first of those limitations is equivalent to, or somewhat less restrictive than, Dr. Lutsky's opinion that plaintiff would need 30-minute breaks at 30-minute intervals and Dr. Kwok's opinion that plaintiff would need 30- to 60-minute breaks "[f]requently throughout [the] day." [AR 410, 469, 483, 665-666]. Dr. Lutsky and Dr. Kwok both estimated that plaintiff was likely to be absent from work more than three days a month due to his impairments. [AR 449, 470, 666]. Dr. Lutsky found "marked" bilateral upper extremity limitations. [AR 408-409, 483].

[5] This disposition makes it unnecessary to consider plaintiff's remaining contentions.

15

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for a award of benefits consistent with this memorandum of decision.

**IT IS SO ORDERED.**

March 30, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge